THE KING *vs.* T. W. HOBRON and J. SHAW.

APPEAL FROM POLICE JUSTICE OF HONOLULU.

HEARING, JULY 26, 1890.    DECISION, JULY 31, 1890.

JUDD, C.J., McCULLY, BICKERTON, DOLE, JJ.

The election law of 1888 is construed to mean that for the purpose of voting for Nobles the three months' required previous residence may be had in different precincts or local districts of the island district for which the Nobles are elected, but the voter must at the time of the election be a resident of the precinct in which he is registered for voting.

In the second case the Court considers whether upon an agreed statement of facts the voter has retained his residence in the precinct of his registration.

OPINION OF THE COURT, BY McCULLY, J.

The defendants were members of the Board of Inspectors of Election for Precinct 2, District 2, Island of Oahu, at the special election of July 9th, 1890, for the election solely of one Noble in place of one who had resigned. They are charged with the offense of violating provisions of Chapter 76 of the Session Laws of 1888, which is the general election law. It is admitted that the general proceedings in holding the election were according to law. The charge made is that the defendants unlawfully refused to take the ballot of one Norman Edmund Gedge. The admitted facts are that Mr. Gedge was duly registered as a voter in this precinct, and was entitled to vote there, unless the fact of his removal of residence from this precinct, and taking up a residence in an adjoining precinct "about ten days" previous to the election, properly barred him from casting his vote there. The defendants, inspectors, declined to permit Mr. Gedge to vote under the provisions of Section 32 of the Act, which reads: "Whenever any district shall be divided into

two or more precincts, separate lists of voters residing in each precinct shall be prepared from the register, and no elector shall be permitted to vote in any precinct other than that wherein he resides."

The contention of the prosecution is that the construction given January 25, 1890, by the Justices of this Court, in reply to certain questions propounded to them by the Minister of the Interior, supported the right of Mr. Gedge to vote. We say in that opinion: "That election districts are defined in Section 13; they are 24 in number, and one Representative is allowed for each district, and can be voted for by only the voters of the particular district. But the Nobles, 24 in number, are not apportioned to be voted for singly by the voters of the respective election districts, but nine Nobles are to be voted for by each voter (who is qualified) on the Island of Oahu, and six by each voter on the Island of Hawaii, and so on throughout the group. For purpose, therefore, of voting for Nobles, the Island of Oahu is the 'district,' as is also the Island of Hawaii, etc. If all the voters qualified to vote for Nobles can vote for the number of Nobles prescribed for the island on which the voter lives, it can make no difference in which 'election district' within the island or group of islands he may reside, and any change from one to another of these districts into which the island is divided cannot affect his right to vote for Nobles, provided he has resided on the particular island where he offers to vote for three months immediately preceding the election."

In our view this opinion does not support the claim of the prosecution. It is to the effect that a residence of three months in any part or parts of the island district is the residence required for a man otherwise qualified to vote for Nobles, under which he may register. It does not touch the question of proper registry. The section of the law, then, on which the Inspectors based their actions, requires that he shall be a resident in the district, or voting precinct in which he registers, and a resident of the precinct in which he votes. This would seem to be a needed law for the regulation of voting. The law provides for a voter's getting his name transferred from one

registry to another upon his changing his residence. If he neglects to attend to this, it cannot be said that the law has disfranchised him, or if he changes his residence so shortly before the date of an election that the transfer, which must be done at an advertised public meeting of the Inspectors, cannot be made, he disfranchises himself by his own act, as he would if he chose to make a journey abroad previous to an election.

We consider that in refusing the vote of Mr. Gedge, the defendants followed the law, and we acquit them of the charge.

A separate case is brought against the same defendants in respect to refusing the vote of Charles Lucas at the same election. This case depends on the construction of facts whether Mr. Lucas had a residence in the precinct at the date of the election. We subjoin the report of his testimony given in the Police Court and agreed to be taken here:—

Mr. Lucas testified that he had been registered in this precinct and had voted there at the preceding election, and had not registered in any other precinct. "In January, 1890, I resided on School street, opposite Rice's barn; house belongs to me; I built it. In latter part of January, 1890, Dr. Brodie wanted to rent my house of my wife; she said yes; she and I settled on rent and closed the bargain. Brodie was to have the furniture. After he moved in, my wife and I stopped with him a week. When we rented to Brodie, we were stopping at Niu for a vacation. After Brodie took the house we went back to Niu. The house at Niu belongs part to my wife and part to her grandmother. Brodie took the house on School street on February 1, for a year. I did not intend to give it up as a home—it is my home and permanent residence. The place at Niu is only a temporary residence; it is not fitted up for anything else. None of my property is mortgaged. My furniture is at School street house. On July 9, 1890, I offered to vote at Rice's barn. Defendant Shaw said I could not vote because I lived at Niu; he had no choice in the matter, was very sorry but could not change the law. Hobron agreed with him. I said I did not care. I said nothing about my School street residence. I went away. About 3 P. M. some gentlemen told me I could

vote. I went back to the polls. Shaw again said he was sorry, but I could not vote. A lot of people were standing around and they did most of the talking. I did not care much about it, and thought defendants supposed they were doing their duty. Gedge came with a Supreme Court decision and insisted on voting. I asked leave to vote under protest, but Shaw said he could not allow it, and read the law. I told him my house and residence and furniture were just across the street. I told him the election was for Noble for the Island of Oahu, not Representative.

Cross-examined.—I didn't care anything about it when they refused my vote. I have not brought this prosecution and don't wish it. I rented my house to Brodie for a year and he has lived in it ever since, and I have lived at Niu ever since, except some visits to town. I lived six weeks at Palama while my wife was sick: not in District 2, Precinct 2. I intend to reside at Niu till year is out. I will have to if Brodie keeps my house; there is no written agreement that he shall keep it. On July 9th it was my intention to reside at Niu for the rest of the year. I leased house and furniture to Brodie for the year.

Re-direct.—When Brodie gives up my house, I don't think I shall return to it, but shall stay at Niu."

Upon this testimony we hold that Mr. Lucas had given up residence in the precinct where his vote was refused, and acquit the defendants upon these charges also.

*F. M. Hatch* and *W. A. Whiting,* for the Crown.

*W. O. Smith,* for defendants.